Cowin, J.
FINDINGS OF FACT
1. At all times relevant to this action, Joseph N. Wheeler (“Wheeler”) and Anthony M. Fredella (“Fredella") were partners engaged in the practice of law under the partnership of Fredella & Wheeler.
2. Within the terms of the partnership agreement, Fredella was responsible for litigation and Wheeler was responsible for non-trial work, office management and the financial affairs of the partnership.
3. Within the terms of the partnership agreement, Wheeler and Fredella divided equally the profits of the partnership.
4. Wheeler had dealings with the East Cambridge Savings Bank (“the bank”) since the early 1970s. These dealings included a series of loans, all of which were personal transactions. The loan officer with whom Wheeler dealt was William Ahern (“Ahern”).
5. On May 31, 1981, Wheeler completed and both Wheeler and Fredella executed a document titled “Partnership Authority for Opening and Maintaining Accounts and for Borrowing” (hereinafter “borrowing authority document”). Under the heading “Borrowing Authority” this document states in relevant part:
Any two (insert number) of the following persons, acting singly (jointly-singly) are authorized to act from time to time hereafter in the name of and on behalf of the Partnership concerning the following: To borrow money on the credit of the Partnership and to negotiate the terms of and obtain loans . . .
The words “two” and “singly” are words that were written into blank spaces (represented by the underlining) by Wheeler. They appear to be in the same handwriting and written by the same pen. Although no name appears in the blank space provided for the “following persons,” this absence of names is not fatal. Obviously, the people referred to are Fredella and Wheeler. The names of Fredella and Wheeler appear in the preceding space and in the certification of persons authorized to act. Omitting them under “borrowing authority” appears to have been accidental and does not affect the purpose of the document.
The document states that the authority of any person to act on behalf of the partnership shall remain in full force and effect until the bank receives written notice from all of the partners. No such notice was ever sent to or received by the Bank.
In regard to the opening of bank accounts, the document requires the two signatures of Fredella and Wheeler.
6. The borrowing authority document was executed in May of 1981. No loans were issued or credited to the partnership prior to 1989.
7. In 1989, a personal loan of $17,000 that Wheeler had obtained from the bank became due. Wheeler could not pay off the loan and Ahern told Wheeler that Wheeler could no longer borrow money personally from the bank. If the loan were to be renewed, it must be in the partnership name. Wheeler therefore agreed to roll the loan over into a commercial loan to Fredella and Wheeler.
8. On April 3, 1990, Wheeler completed and submitted to the bank a commercial loan application seeking a $50,000 line of credit. On this application, *20 Wheeler wrote In “Fredella & Wheeler,” signed his name and put “partner” in the space marked ‘Title.” The application states that its “Purpose” is “Line of credit” and that the “Source of Payback” is “Fees received.”
9. On or about May 23, 1990, Wheeler executed and delivered to the bank a $50,000.00 Commercial Promissory Note (“$50,000 note”) signed “Fredella & Wheeler Attorneys at Law, Joseph N. Wheeler.” On this document the firm name was typed in. Wheeler wrote in only his name.
10. On January 2, 1991, Wheeler completed and submitted to the bank a commercial loan application on behalf of Fredella & Wheeler, seeking a $22,000.00 commercial loan. On this document “Fredella & Wheeler Attorneys at Law” was typed and Wheeler wrote in his name. This application states that its purpose is “business operating expenses” and that the “Source of Payback” is “income from business.”
11. On January 8, 1991, Wheeler executed and delivered to the bank a Commercial Promissory Note in the amount of $22,000.00 (“$22,000 note”). This note was signed in the same manner as the May 23, 1990 note.
12. Wheeler executed guarantees for both the $50,000 and $22,000 loans with the bank. The firm name does not appear on the guarantees.
13. Wheeler and Fredella have failed, refused and neglected to pay the amounts required by the above two promissory notes.
14. As of March 2, 1994, the outstanding balance due the bank under the two notes was $85,926.05.
15. Financial statements for the partnership furnished to the bank for the years ending December 31, 1989 and December 31, 1990 that did not list the $50,000 and $22,000 notes as loans of the partnership did not provide notice to the bank that the partnership did not consider the loans in question as partnership obligations.
16. Fredella as an individual or as a member of a partnership never received any of the proceeds of the loans in issue. The partnership of Fredella and Wheeler never received any money from these loans.
17. Fredella never had any personal dealings with any agent, servant or employee of the plaintiff.
18. All payments on said loans were made to the bank on personal funds of Wheeler.
19. Wheeler went into personal bankruptcy. The partnership however, never went into bankruptcy.
20. The borrowing authority document was a completed document when Fredella signed it. It stated that either one of the partners could borrow money on behalf of the partnership. Thus, Fredella provided actual authority for Wheeler to borrow on behalf of the partnership. Further, even if for any reason Fredella did not think he was providing such actual authority, he created a situation in which there was apparent authority on which the bank relied.
DISCUSSION
I have found that Fredella signed the partnership authority document with the word “singly” on it. Fredella, an attorney, presumably knew how to read documents such as this one. Thus, the document authorizes one partner to borrow money on behalf of the partnership. Further supporting the enforcement of the partnership authority document as written (i.e., giving effect to the word “singly”) is that the document is meaningless if interpreted any other way. This was only a two-person partnership. If the two partners wanted to borrow money they could simply co-sign a note. Thus, the authorization is superfluous if it requires two signatures for borrowing. That is, the “borrowing authoriiy” provision is purposeless unless it was intended to vest in one or the other partner the power to borrow money on behalf of the partnership (thereby binding the other). If it were intended simply to authorize borrowing on both signatures, it is meaningless and unnecessary.[1], [2]
RULINGS OF LAW
1. The notes in question are the obligations of the partnership of Fredella and Wheeler as a result of the borrowing authority document signed by both Fredella and Wheeler, dated May 31, 1981. This document provides actual authority for either of the partners to borrow money on behalf of the partnership.
2. Fredella is jointly and severally liable for the two promissory notes executed by Wheeler on behalf of the partnership because the notes were executed by Wheeler under the authority given him by the May 31, 1981 borrowing authority document.
3. Since the funds obtained from the plaintiff by Wheeler were never in the custody of the partnership of Fredella and Wheeler, the provisions of G.L.c. 108A, §14 have no application in this case.
4. In the construction of written contracts words must be construed in their usual and ordinary sense.
5. Apparent authority results from conduct by the principal which causes a third person reasonably to believe that a particular person has authority to enter into negotiation or make representations as his agent.
ORDER FOR JUDGMENT
It is hereby ORDERED that judgment shall enter for the plaintiff in the amount of $85,926.05, plus interest and costs.

 I recognize that it seems unusual that the Fredella and Wheeler partnership would require both partners’ signatures to open accounts and only one signature for borrowing purposes. Given the clear language of the document, I am not prepared to hold that it is so confused as to be a nullity.

 Indeed, even the party the bank seeks to charge, Fredella, has conceded that the document appears to state that either partner may bind the partnership for borrowing purposes.